# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**GLENN BURTON, JR.,**
    **Plaintiff,**

 v.                Case No. 07-CV-0303

**AMERICAN CYANAMID et al.,**
    **Defendants;**

**RAVON OWENS,**
    **Plaintiff,**

 v.                Case No. 07-CV-0441

**AMERICAN CYANAMID et al.,**
    **Defendants;**

**CESAR SIFUENTES,**
    **Plaintiff,**

 v.                Case No. 10-CV-0075

**AMERICAN CYANAMID et al.,**
    **Defendants.**

---

## DECISION AND ORDER

Plaintiffs bring these negligence and failure to warn claims against various manufacturers of white lead carbonate pigment (WLC), alleging that they were harmed by ingesting paint containing WLC when they were children. Defendants Atlantic Richfield Company (ARCO) and Sherwin Williams now move for summary judgment on the failure to warn claims on grounds that, as suppliers of WLC to paint manufacturers, they owed no legal duty to warn end users of the hazards of using paint containing WLC.

I note that plaintiffs contest the characterization of Atlantic Richfield's predecessors and Sherwin Williams as component parts suppliers rather than manufacturers of finished products. I will not address that factual dispute here. Because issues of material fact exist as to whether component part suppliers of WLC to the paint industry owed a duty to warn, the characterization of defendants as component part suppliers or finished product manufacturers is immaterial to my denial of their motions for summary judgment.

I. **SUMMARY JUDGMENT STANDARD**

When I consider a motion for summary judgment, I am to treat the evidence of the non-movant as true and draw all reasonable inferences in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). I am to grant summary judgment if the movant shows that there are no genuine issues of material fact such that the movant is entitled to judgment as a matter of law. *Blasius v. Angel Automotive, Inc.,* 839 F. 3d 639, 644 (7th Cir. 2016).

II. **LEGAL BACKGROUND**

Plaintiffs proceed under the risk-contribution theory of liability, which the Wisconsin Supreme Court extended to plaintiffs alleging injury from WLC in *Thomas ex rel. Gramling v. Mallet*, 285 Wis. 2d 236 (2005). *Thomas* permits such risk-contribution claims to sound in negligence or in strict products liability. *Id.* at ¶¶ 161-62. The instant plaintiffs bring claims of both kinds.

Among the elements required to prevail on the strict liability claim, plaintiffs must prove "that the white lead carbonate was defective when it left the possession or control of the manufacturers." *Id.* at ¶ 162. Plaintiffs rely on the failure-to-warn theory of product

defect recognized by Wisconsin law: "a product is defective based on a failure to adequately warn when an intended use of the product is dangerous, but the manufacturer did not provide sufficient warning or instruction." *Godoy ex. rel. Gramling v. E.I. DuPont de Nemours and Co.*, 319 Wis.2d 91, ¶ 29 (2009).

Separately, the negligence claim detailed in *Thomas* requires proof "that the Pigment Manufacturers' conduct in producing the white lead carbonate constituted a breach of a legally recognized duty to [the plaintiffs]." *Thomas*, 285 Wis. 2d at ¶ 161. Plaintiffs proffer the duty to warn as one such legally recognized duty, while reserving the possibility that parallel negligence claims might be pursued on the basis of other sorts of duty.

Defendants argue that, as component suppliers to the paint industry, WLC manufacturers had no legally recognized duty to warn purchasers of paint about the hazards of paint containing WLC. The Wisconsin Supreme Court has not directly addressed this legal question. *Thomas*, 285 Wis. 2d at ¶ 3, n. 2. I must therefore derive my conclusion regarding WLC manufacturers' duty to warn from Wisconsin tort law.

### III. **DISCUSSION**

A. *The Restatement (Third) Framework for Component Seller Liability*

The defendants argue that, with certain exceptions, Wisconsin law assigns the duty to warn end users of a finished product of hazards associated with that product only to the manufacturer of that finished product and not to suppliers of component parts. They argue that only paint manufacturers, and not WLC manufacturers, bore any duty to warn purchasers of paint containing WLC about the product's hazards.

3

Defendants base this argument on the Wisconsin Court of Appeals' adoption of the approach to component supplier liability described in the Restatement (Third) of Torts § 5 (1998). *Schreiner v. Wieser Concrete Products, Inc.*, 2006 WI App 138, ¶ 14, 294 Wis.2d 832, 720 N.W.2d 525; also see *Spychalla v. Boeing Aerospace Operations, Inc.*, 2015 WL 3504927 at *3, n. 2 (E.D.Wis. 2015). The Restatement reads in relevant part as follows:

> § 5. Liability of Commercial Seller or Distributor of Product Components for Harm Caused by Products into Which Components Are Integrated
>
> One engaged in the business of selling or otherwise distributing product components who sells or distributes a component is subject to liability for harm to persons or property caused by a product into which the component is integrated if:
>
> > (a) the component is defective in itself, as defined in this Chapter, and the defect causes the harm[.]

Restatement (Third) of Torts: Prod. Liab. § 5 (1998). Defendants argue that the Wisconsin Supreme Court's decision in *Godoy* precludes a finding that WLC was "defective in itself" under *any* products liability theory. Therefore, they argue, WLC manufacturers are shielded from liability and owed no duty to warn.

Defendants misread *Godoy.* In that case, the state supreme court identified three categories of product defect under Wisconsin law: (1) manufacturing defects, which arise when a product deviates from a manufacturer's specifications, and that deviation causes it to be unreasonably dangerous;[1] (2) design defects, which arise when the design of the product is the cause of unreasonable danger; and (3) defects based on a

---

[1] The plaintiff in *Godoy* did not allege a manufacturing defect with respect to WLC, and no manufacturing defect is claimed in the present case.

4

failure to warn, which occur "when an intended use of the product is dangerous, but the manufacturer did not provide sufficient warning or instruction." *Godoy,* 319 Wis.2d at ¶ 29. The court ruled narrowly that the presence of lead does not render WLC defectively *designed*: lead is a characteristic ingredient of WLC, without which WLC would be a different product. *Id.* at ¶ 31. The court's holding leaves emphatically open the possibility that WLC might be found defective on grounds other than design. *Id.* at 28 ("[A] determination that a product is *defective* is not identical to a determination that the product was *defectively designed*.")(emphasis in original).

Specifically, the *Godoy* court invites consideration of the question whether WLC is defective on a duty-to-warn analysis, which, as the court explains it, amounts to a factual assessment of the product's dangerousness as reasonably foreseeable to the manufacturer, and of the adequacy of the manufacturer's warnings in light of that foreseeable risk. *Id.* at ¶ 36, n. 15 ("Under [Restatement (Second) of Torts] Section 402A, manufacturers have an obligation to warn consumers about the hidden dangers of their products. If the defendant manufacturers had reason to anticipate that white lead carbonate pigment would be dangerous for its intended use, that fact could give rise to a requirement to give adequate warning. Without such warning, white lead carbonate could be considered "defective" under § 402A.").[2]

To summarize: under *Godoy* and § 402A of the Restatement (Second), a factual showing that a WLC manufacturer (1) intended that its product would be used in

---

[2] The *Godoy* court's citation to *Schuh v. Fox River Tractor* as exemplifying the duty-to-warn category of product defect reinforces the synergy between duty-to-warn and unreasonable dangerousness; the court describes the *Schuh* case as "concluding that a tractor could be *unreasonably dangerous and defective* when the manufacturer failed to adequately inform the consumer that engaging the clutch would not turn off the fan." *Godoy,* 319 Wis. 2d at ¶ 29, n.12 (emphasis supplied).

5

residential interior paint; (2) should reasonably have foreseen that the product would be dangerous when used in residential interior paint; and (3) failed to adequately warn consumers about those dangers would support a conclusion that the WLC was "defective." I next turn back to the Restatement (Third) framework for Component Supplier Liability, which provides that a manufacturer of a component part may be liable if the component is defective in itself and that defect causes the harm to the end user. Both requirements would be satisfied: the WLC would be defective in itself, and that defect (the presence of inadequately-warned-about, toxic lead) would be the cause of the harm to the end user of the paint. The WLC manufacturer could therefore be liable for harms to the end user under the Restatement (Third). Thus, the WLC manufacturer's duty to warn the end user remains intact.

Defendants protest that omission of a warning does not make a component "defective in itself" under the Restatement (Third) when the component is sold to a knowledgeable manufacturer of finished products. In making this argument, defendants rely on a misreading of a hypothetical from the commentary to the Restatement, in which a supplier of bulk foam to a company that processes the foam and then uses the processed foam to make disposable dishware has no duty to warn end users when both the component foam supplier and the finished dishware manufacturer know that the *processed* foam is capable of causing allergic reaction.[3] Here, the reason that the

---

[3] The *Restatement (Third) of Torts* § 5 cmt. b, illus. 4, reads as follows:

ABC Foam Co. manufactures bulk foam with many different uses. XYZ Co. purchases bulk foam from ABC, then **processes the foam** and incorporates the processed foam in the manufacture of disposable dishware. ABC becomes aware that XYZ is using processed foam in the dishware. ABC and XYZ are both aware that there is a potential danger that **processed foam** may cause allergic skin reactions for some users. ABC is aware that XYZ is not warning consumers of this potential problem. ABC has no duty to

6

component manufacturer has no duty to warn the end user is not that the component has been sold to a knowledgeable manufacturer of finished products; it is, rather, that the foam as initially produced by the component manufacturer is not dangerous, and only becomes capable of producing allergic reaction after it undergoes processing by the finished product manufacturer. It is for this reason, and not because the alleged defect is failure-to-warn, that the component bulk foam is not "defective in itself" as defined by § 5. This is in contrast with WLC which is toxic even before it is integrated into paint. See *Thomas,* 285 Wis. 2d at ¶ 159 ("[T]he inherent dangerousness of the white lead carbonate pigment existed the moment the pigment manufacturers created it.").

## B. The "Bulk Supplier" Doctrine

Defendants also urge that they are shielded from liability by the "bulk supplier" doctrine. "Under this defense, a bulk supplier who supplies a dangerous product to a sophisticated purchaser cannot be held liable for not warning the ultimate users of the product of its dangers." *Forest v. E.I. DuPont De Nemours and Co.*, 791 F. Supp. 1460 (D, Nev. 1992) (quoting *Sara Lee Corp. v. Homasote Co.*, 719 F.Supp. 417, 420 (D. Md. 1989)).. This argument is unavailing, for several reasons.

---

warn XYZ or ultimate consumers of the dangers attendant to use of the **processed foam** for disposable dishware. The **foam sold by ABC is not defective in itself** as defined in this Chapter. A supplier of a component has no duty to warn a knowledgeable buyer of risks attendant to special application of its products when integrated into another's product. ABC did not participate in the design of the disposable dishware manufactured by XYZ, and is thus not subject to liability under Subsection (b).

(Emphasis supplied).

First, Wisconsin courts have not adopted the bulk supplier doctrine; defendants' citation is to a 1986 federal district court decision that merely predicted that Wisconsin courts would adopt the doctrine. *Nigh v. Dow Chem. Co.*, 634 F. Supp. 1513, 1517 (W.D. Wis. 1986).

Second, to apply the bulk supplier doctrine in the present case and absolve WLC manufacturers of the duty to warn would be to controvert the intent of the Wisconsin Supreme Court in making WLC manufacturers susceptible to suit under the risk contribution theory. *See Thomas,* 285 Wis. 2d at ¶¶ 158-60 (rejecting defendant Pigment Manufacturers' argument that "because they were not in exclusive control of the risk their product created, the risk-contribution model should not apply to them").

Third, the policy justifications that generally underlie the bulk supplier doctrine are not applicable here. Courts that apply the doctrine generally do so on grounds that imposing a duty to warn on the seller of the raw material would "require the seller to develop expertise on a multitude of different end products and to investigate the actual use of raw materials by manufacturers over whom the supplier has no control." *Restatement (Third) of Torts*, § 5 cmt. c. Courts also rely on the premise that the intermediary who manufactures the finished product is better positioned to warn the ultimate consumer of dangers than the bulk supplier. *See, e.g., Forest*, 791 F. Supp at 1465. Both premises are undermined in the present case by substantial evidence in the record that, in the words of the Wisconsin Supreme Court, "shows the Pigment Manufacturers actually magnified the risk through their aggressive promotion of white lead carbonate, even despite the awareness of the toxicity of lead." *Thomas*, 285 Wis. 2d at ¶ 160.

## IV. CONCLUSION

I am not persuaded that component-part suppliers of WLC to the paint industry are exempt from the duty to warn as a matter of law. Further, I am satisfied that there are facts in the record sufficient to support a reasonable jury's finding that the defendants owed a duty to warn end users of the risks associated with WLC in paint, based on the framework established in *Godoy* and the Restatement (Third).

**IT IS ORDERED** that Defendant The Sherwin William Company's Motions for Joinder in Defendant Atlantic Richfield Company's Motions for Summary Judgment Based on Component Suppliers' Legal Duty to Warn (No. 07-cv-0303, ECF No. 610; No. 07-cv-0441, ECF No. 537; No. 10-cv-0075, ECF No. 466) are **GRANTED.**

**IT IS FURTHER ORDERED** that defendant Atlantic Richfield Company's Motions for Summary Judgment Based on Component Suppliers' Lack of Legal Duty to Warn (No. 07-cv-0303, ECF No. 530; No. 07-cv-0441, ECF No. 467; No. 10-cv-0075, ECF No. 397) are **DENIED.**

Dated at Milwaukee, Wisconsin, this 12th day of June, 2018.

    s/Lynn Adelman
    LYNN ADELMAN
    District Judge